,Andres Santana
_____
FULL NAME

_____
COMMITTED NAME (if different)

Centinela State Prison ("CEN"), C4-110
_____
FULL ADDRESS INCLUDING NAME OF INSTITUTION

P.O. Box 921, Imperial, Ca. 92251
_____

K00977
_____
PRISON NUMBER (if applicable)

In Pro Se

FILED
CLERK, U.S. DISTRICT COURT

JAN 1 2 2024

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

ANDRES SANTANA,

                                PLAINTIFF,

v.

GEORGE GASCON, L.A. CO. DIST. ATTY.; TERESA MAGNO,
L.A. CO. DEP. DIST. ATTY.; STEVE COOLEY; JOHN/JANE
DOES, DEP'S. DIST. ATTY'S.         DEFENDANT(S).

CASE NUMBER CV24 421- MCS (AS)

*To be supplied by the Clerk*

**CIVIL RIGHTS COMPLAINT**
**PURSUANT TO** *(Check one)*

☒ 42 U.S.C. § 1983
☐ Bivens v. Six Unknown Agents 403 U.S. 388 (1971)

## A. PREVIOUS LAWSUITS

1. Have you brought any other lawsuits in a federal court while a prisoner: ☒ Yes   ☐ No

2. If your answer to "1." is yes, how many? __Two (2).__

   Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on an attached piece of paper using the same outline.)

   LAWSUIT ONE: The lawsuit complained defendants engaged in a practice, policy, or custom of segregating pre-trial detainee Mexican inmates in a segregated housing unit at the Los Angeles County Sheriff's Mens Central Jail's Module 3500, under the guise of safety and security. The practice, policy, or custom included deputy sheriffs treating these inmates as less than human, calling them sewer-rats and routinely assaulting, battering, degrading, humiliating, and subjecting them to cruel and unusual living conditions. Plaintiff, himself, was subjected to this treatment from March of 2001 to May of 2003.

///
///
///
///
///
///
///

a. Parties to this previous lawsuit:

Plaintiff Andres Santana

Defendants Los Angeles County Sheriff Lee Baca and various deputies.

b. Court U.S. Dist. Crt. Central District of California.

c. Docket or case number CV-04-2872 ABC (FMO)

d. Name of judge to whom case was assigned Audrey B. Collins, Chief U.S. Dist. Judge.

e. Disposition (For example: Was the case dismissed? If so, what was the basis for dismissal? Was it appealed? Is it still pending?) Dismissed w/prejudice; adopting Mag. Judge's R & R.

f. Issues raised: Violation of U.S. Const. 5th and 14th Amend's. Due Process and Equal Protection Clauses, and 8th Amend. Cruel and Unusual Punishment Clause.

g. Approximate date of filing lawsuit: April 30, 2004.

h. Approximate date of disposition September 5, 2011.

CONTINUED ON PAGE 2A

B. **EXHAUSTION OF ADMINISTRATIVE REMEDIES :** N/A. This Complaint is against the Los Angeles County District Attorney and his deputies.

1. Is there a grievance procedure available at the institution where the events relating to your current complaint occurred? ☐ Yes   ☐ No

2. Have you filed a grievance concerning the facts relating to your current complaint? ☐ Yes   ☐ No

   If your answer is no, explain why not

3. Is the grievance procedure completed? ☐ Yes   ☐ No

   If your answer is no, explain why not

4. Please attach copies of papers related to the grievance procedure.

C. **JURISDICTION**

This complaint alleges that the civil rights of plaintiff Andres Santana
                                                    (print plaintiff's name)

who presently resides at CEN, C4-110, P.O. Box 921, Imperial, Ca. 92251
                         (mailing address or place of confinement)

were violated by the actions of the defendant(s) named below, which actions were directed against plaintiff at

Compton or Los Angeles California
                    (institution/city where violation occurred)

ANDRÉS SANTANA
PAGE 2A
42 U.S.C. §1983

      LAWSUIT TWO: The lawsuit complained defendants placed Hispanic inmates on
               Lockdown, depriving them of rights, privileges, and outdoor
               recreational exercise under the guise of safety and security,
               while affording the same to inmates of other races preferentially.
               The deprivations were extended for prolonged periods of time
               and were not narrowly tailored to ensure safety and security.

a. Parties to this previous lawsuit:

   Plaintiff: Andres Santana

   Defendants: Kern Valley State Prison ("KVSP") Warden Mike Knowles and
             various KVSP prison officials.

b. Court: U.S. Dist. Crt. Eastern Dist. of California.

c. Docket or case number: 1:08-cv-00237-LJO-SAB

d. Name of judge to whom case was assigned: Lawrence J. O'neill, U.S. Dist. Judge.

e. Disposition: Dismissed w/prejudice; adopting Mag. Judge's R & R.

f. Issues raised: Violation of U.S. Const. 14th Amend's. Due Process and
                 Equal Protection Clauses, and 8th Amend. Cruel and Unusual
                 Punishment Clause.

g. Approximate date of filing lawsuit: November 9, 2009.

h. Approximate date of disposition: June 29, 2018.

on (date or dates) <u>specified in the attached "Supporting Facts."</u>
           (Claim I)              (Claim II)              (Claim III)

**NOTE:**    You need not name more than one defendant or allege more than one claim. If you are naming more than five (5) defendants, make a copy of this page to provide the information for additional defendants.

1. Defendant    <u>George Gascon</u>                     resides or works at
(full name of first defendant)

         <u>L.A. Co. D.A.'s Office, 211 West Temple St., Suite 1200, L.A., Ca. 90012</u>
         (full address of first defendant)

         <u>Los Angeles County District Attorney</u>
         (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual    ☒ official capacity.

Explain how this defendant was acting under color of law:

<u>George Gascon is the Los Angeles County District Attorney. He is responsible for responding to Penal</u>
<u>Code §1054.9 postconviction discovery requests served on the Los Angeles County District Attorney's</u>

CONTINUED ON PAGE 3A

2. Defendant    <u>Teresa Magno</u>                     resides or works at
(full name of first defendant)

         <u>L.A. Co. D.A.'s Office, 211 West Temple St., Suite 1200, L.A., Ca. 90012</u>
         (full address of first defendant)

         <u>Los Angeles County Deputy District Attorney</u>
         (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual    ☒ official capacity.

Explain how this defendant was acting under color of law:

<u>Teresa Magno was the Los Angeles County Deputy District Attorney who produced over 700 pages of</u>
<u>documents in a prosecutor may hide, defendant must seek fashion, causing Plaintiff to not have</u>

CONTINUED ON PAGE 3A

3. Defendant    <u>Steve Cooley</u>                     resides or works at
(full name of first defendant)

         <u>Steve Cooley & Associates, 46 Peninsula Center, #419, Rolling Hills Estates, Ca. 90247</u>
         (full address of first defendant)

         <u>Former Los Angeles County District Attorney</u>
         (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual    ☒ official capacity.

Explain how this defendant was acting under color of law:

<u>Steve Cooley was the Los Angeles County District Attorney whom Plaintiff served his Penal Code §1054.9</u>
<u>postconviction discovery requests and motion on. He was responsible for responding to the requests</u>

CONTINUED ON PAGE 3A

ANDRES SANTANA
PAGE 3A
42 U.S.C. §1983

1. Defendant George Gascon (cont.)

   Office. He is also responsible for litigating the Penal Code §1054.9 postconviction discovery motions filed in the Los Angeles County Superior Court to compel the production of the requested postconviction discovery materials, and producing the same.

2. Defendant Teresa Magno (cont.)

   knowledge of discovery materials in the possession of the prosecution and law enforcement authorities to which Plaintiff would have been entitled at time of trial, for almost two (2) decades after he initially requested them, as set forth in the within "Supporting Facts."

3. Defendant Steve Cooley (cont.)

   and motion, and producing the materials requested therein. He was also responsible for litigating the Penal Code §1054.9 postconviction discovery motion Plaintiff filed in the Los Angeles County Superior Court to compel the production of the requested postconviction discovery materials.

4.  Defendant    __John/Jane Does_____ resides or works at
                    (full name of first defendant)

     __L.A. Co. D.A.'s Office, 211 West Temple St., Suite 1200, L.A., Ca. 90012__
                    (full address of first defendant)

     __Los Angeles County Deputies District Attorneys_____
                    (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both):  ☐ individual    ☒ official capacity.

Explain how this defendant was acting under color of law:

__John/Jane Does were the Los Angeles County Deputies District Attorneys that received and/or handled__
__Plaintiff's Penal Code §1054.9 postconviction discovery requests and motion. They were responsible__

5.  Defendant    _____        CONTINUED ON PAGE 4A
                                                                          _____ resides or works at
                    (full name of first defendant)

     _____
                    (full address of first defendant)

     _____
                    (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both):  ☐ individual    ☐ official capacity.

Explain how this defendant was acting under color of law:

_____

_____

ANDRES SANTANA
PAGE 4A
42 U.S.C. §1983

4. Defendant John/Jane Does (cont.)

   for responding to the requests and motion, and producing the materials requested
   therein. They were also responsible for litigating the Penal Code §1054.9
   postconviction discovery motion Plaintiff filed in the Los Angeles County
   Superior Court to compel the production of the requested postconviction discovery
   materials.

D. **CLAIMS***

**CLAIM I**

The following civil right has been violated:

"No state shall ... deprive any person of life, liberty, or property without due process of law." United States Constitution, Fourteenth Amendment, Section One.

**CLAIM II**

"No state shall ... deny to any person within its jurisdiction the equal protection of the laws." United States Constitution, Fourteenth Amendment, Section One.

Supporting Facts:  Include all facts you consider important.  State the facts clearly, in your own words, and without citing legal authority or argument.  Be certain you describe, in separately numbered paragraphs, exactly what each DEFENDANT (by name) did to violate your right.

1. Plaintiff was charged by Information originally filed July 25, 2002, in People v. Santana, No. TA063973, Los Angeles County Superior Court, Compton Court ("trial court"), but subsequently amended with: COUNT I -- Special circumstance (robbery/murder of Reynaldo Aguilar (Penal Code §§187 (a), 190.2 (a)(17)(A), (d)); COUNT II -- Robbery of Reynaldo Aguilar (Penal Code §211); COUNT III -- Special circumstance (multiple and robbery) murder of Anthony Esquer (Penal Code §§187 (a), 190.2 (a)(3) and (a)(17)(A), (d)); and COUNT IV -- Robbery of Raul Mata (Penal Code §211). The offenses were allegedly committed on **February 18, 2001, at approximately 1:13 a.m.**

2. As to each count, it was specially alleged that they were committed for the benefit and direction of and in association with a criminal street gang with the specific intent to promote, further, and assist in criminal conduct by gang members. Penal Code §186.22 (b)(1).                    CONTINUED ON PAGE 5A

*\*If there is more than one claim, describe the additional claim(s) on another attached piece of paper using the same outline.*

ANDRES SANTANA
PAGE 5A
42 U.S.C. §1983

3. Pleas of not guilty and denials of all special allegations were duly entered
   and the matter continued for further proceedings, including jury trial.

4. At Plaintiff's jury trial, the People presented NO PHYSICAL EVIDENCE that
   connected Plaintiff to the incident in question, and only presented ONE
   EYEWITNESS by the name of RAUL MATA (see ¶1, at COUNT IV, above), who testified
   he witnessed the incident. He testified he was homeless and spent all day, Saturday,
   February 17, 2001, with Reynaldo Aguilar and Anthony (Tony) Esquer. During the
   course of Saturday, February 17, 2001, he drank about eighteen (18) beers, but
   while sitting in Reynaldo Aguilar's Lincoln Navogator, SUV, he consumed four (4)
   twenty-four (24) ounce beers and was smoking crack cocaine with both Aguilar and
   Esquer. He also testified he did not sleep all day Saturday, February 17, 2001.
   That although he laid down to sleep, on Friday, February 16, 2001, at 9:00 p.m.,
   in a lot of places on the street, he ended up just lying down and did not sleep.
   Then, after the incident, when taken to the Sheriff's police station, he did
   not sleep there either. His interview with detectives began at about 9:00 a.m.,
   Sunday, February 18, 2001. He was shown six-packs at 10:30 a.m. Raul Mata,
   therefore, had been awake from 9:00 p.m., on Friday, February 16, 2001, to
   0113 hrs., on Sunday, February 18, 2001 (when the incident occurred), all
   through at least 10:30 a.m., at the police station, a total of about thirty-
   eight (38) hours. This thirty-eight (38) hour tally does not take into account
   the hours of the day Raul Mata was awake, on Friday, February 16, 2001, before
   9:00 p.m. Given the fact that he was homeless, it is reasonable to assume that
   he was awake for at least another twelve (12) hours -- totalling fifty (50)
   hours of being without sleep. Reynaldo Aguilar and Anthony (Tony) Esquer's
   toxicology reports, however, denote they were both under the influence of
   Methamphetamine and two (2) kinds of Cocaine, explaining Raul Mata's extraordinary
   ability to drink vasts amounts of alcohol and not sleep, after spending all
   day with them. This is the condition Raul Mata's senses were in when he testified
   he saw Plaintiff and Eric ("Edward Nevarez") at the scene of the incident in
   question. Minutes after the incident, Raul Mata approached a Sheriff's deputy
   who testified he described Plaintiff being five feet ten inches (5'10") tall
   with a shave dhead. But, at trial, Raul Mata testified that Plaintiff was
   five feet five inches (5'5") tall, Plaintiff's actual height. Additionally,
   the following morning at the police station he told Detectives Michael Scott
   and Karen Shonka he had been seeing Plaintiff in the neighborhood for the past
   year once a month. Plaintiff, however, was just released from prison, on
   November 7, 2000, after serving a fourteen (14) month term, i.e., he had been
   on the streets for only approximately three (3) months. At trial, Raul Mata
   testified he had seen Plaintiff in the neighborhood from time to time over
   the past few years. He also testified he must have been misunderstood by all
   law enforcement personnel whose reports documented his misidentification of
   Plaintiff, including erroneous physical description, and his impossible account
   of how he was familiar with him. All law enforcement personnel who interviewed
   Raul Mata testified they understood him and they felt he understood them. They
   made no notations of a language barrier, nor did they request a translator or
   follow up interview with a translator.

///

ANDRES SANTANA
PAGE 5B
42 U.S.C. §1983

5. Plaintiff's defense was mistaken identity and actual innocence. On February 14,
2001 (Valentine's Day), he attended the wedding of his friend, Monique Zavala.
The chapel videotaped the wedding, showing Plaintiff with an inch and a half (1½)
of hair. Although a small get together was had following the wedding, on February 16,
2001, the actual reception occurred on Saturday, February 17, 2001. Plaintiff
presented various witnesses who testified he arrived at the February 17, 2001,
reception with his girlfriend in the early evening, remained there all evening, night, and did
not leave until around 3:00 a.m., Sunday, February 18, 2001, when he drove the
bride's mother, her husband, and his girlfriend home. Plaintiff's alibi witnesses
all testified he had an inch and a half (1½) of hair that night.

   A. The Los Angeles County Sheriff's Department ("LASO"), Lawndale Sheriff's
   took individual polaroid pictures of Plaintiff and Richard (Rick) Morales,
   on February 20, 2001, which showed Plaintiff with an inch and ahalf (1½)
   of hair. The pictures were taken at the North 405 Freeway-Redondo Beach on ramp
   during a traffic stop of the Honda Accord Plaintiff was driving.

   B. On February 20, 2001, LASO's Northern Region Surveillance Apprehension
   Team ("NORSAT") Cardinal Team, began a surveillance of Plaintiff, at the
   request of Detective Michael Scott. The logs of the surveillance document
   the traffic stop mentioned at A, above.

   C. The picture taken of Plaintiff, mentioned at A, above, has never been produced,
   despite it being requested since Plaintiff's 2002 trial.

   D. The picture taken of Richard (Rick) Morales, mentioned at A, above, is
   documented in a County of Los Angeles -- Sheriff's Department -- Supplementary
   Report, File No. 001-03149-2112-011 (Apr. 21, 2001), by: Detectives Michael
   Scott and Karen Shonka, at p. 19, ¶8, as being shown to Raul Mata, on March 14,
   2001, by Karen Shonka ("photograph of Richard Dean Alfredo Morales, MH,
   DOB: 07-17-1978, that had been taken by the NORSAT Surveillance Team during a
   surveillance of Andres (Blanco)").

   E. Coupling the February 14, 2001, wedding video with the picture taken of
   Plaintiff, mentioned at A, above, conclusively establishes a chronological
   timeline showing Plaintiff had an inch and a half (1½) of hair, on February 17-18,
   2001, like his alibi witnesses testified, and not a shaved head, like Raul
   Mata testified.

   F. The February 14, 2001, wedding video, was not shown to the jury at Plaintiff's
   2002 trial because his trial counsel, Timothy Nilan, forgot it at home.

6. On December 2, 2002, the jury found Plaintiff guilty of all counts. On May 20,
2003, the court imposed two (2) life sentences without the possibility of
parole, and additional years for the gang allegations.

7. On direct review of the judgment, all was affirmed with the exception of some
years as to the gang allegations.

8. In 2002, California Governor Gray Davis signed Senate Bill 1391 into law. Senate
Bill 1391 codified Penal Code §1054.9 which "require[s] that discovery materials
to which a defendant would have been entitled at the time of trial be made
reasonably accessible to the defendant if he or she has been sentenced to death

ANDRES SANTANA
PAGE 5C
42 U.S.C. 1983

or life in prison without the possibility of parole and files a specified
motion or writ of habeas corpus that makes a specified showing. Th[e] bill
[...] specifies that the only means of obtaining access to physical evidence
for postconviction DNA testimony is through other specified procedures."
Governor Gray Davis' Signing Message regarding Stats. 2002, Ch. 1105 (S.B. 1391),
¶2.

9. Penal Code §1054.9 (c), states in relevant part: "The procedures for obtaining
access to physical evidence for purposes of postconviction DNA testing are
provided in Section 1405, and nothing in this section shall provide an alternative
means of access to physical evidence for those purposes."

10. Penal Code §1405 (a) states: " A person who was convicted of a felony and is
currently serving a term of imprisonment may make a written motion, pursuant
to subdivision (d), before the trial court that entered the judgment of conviction
in his or her case, for performance of forensic deoxyribonucleic acid (DNA)
testing.

11. Penal Code §1405 (b)(1) states, in relevant part: "An indigent convicted person
may request appointment of counsel in order to prepare a motion pursuant to
subdivision (d) by sending a written request to the court. The request shall
include the person's statement that he or she was not the perpetrator of the
crime and shall explain how the DNA testing is relevant to his or her assertion
of innocence. [...]."

12. Penal Code §1405 (b)(4) states: "This section does not provide for a right to
the appointment of counsel in a postconviction collateral proceeding, or to
set a precedent for any such right, in any context other than the representation
being provided an indigent convicted person for the limited purpose of filing
and litigating a motion for DNA testing pursuant to this section."

13. Penal Code §1405 (d)(2) states: "Notice of the motion shall be served on the
Attorney General, the district attorney in the county of conviction, and, if
known, the governmental agency or laboratory holding the evidence sought to
be tested. Responses, if any, shall be filed within 90 days of the date on
which the Attorney General and the distrci attorney are served with the motion,
unless a continuance is granted for good cause."

14. Penal Code §1405 (f) states: "If the court determines that the convicted person
has met all of the requirements of subparagraphs (A) to (F), inclusive, of
paragraph (1) of subdivision (d), the court may, as it deems necessary, order
a hearing on the motion. The judge who conducted the trial, or accepted the
convicted person's plea of guilty or nolo contendere, shall conduct the
hearing unless the presiding judge determines that judge is unavailable. Upon
request of either party, the court may order, in the interest of justice, that
the convicted person be present at the hearing of the motion. Either party,
upon request, may request an additional 60 days to brief issues raised in
subdivision (g)."

///
///
///

ANDRES SANTANA
PAGE 5D
42 U.S.C. §1983

15. Penal Code §1405 (l) states, in relevant part: "DNA testing ordered by the court pursuant to this section shall be done as soon as practicable."

16. Penal Code §1054.9 DOES NOT CONTAIN ANY of the Penal Code §1405 RIGHTS AND PROCEDURES set forth at ¶¶10-15, above, for a person who was convicted of a felony and is currently serving a term of imprisonment making a written motion for performance of DNA testing, stating that he or she was not the perpetrator of the crime, and asserting innocence. Via Penal Code §1054.9, Plaintiff stated/states and asserted/asserts the same.

17. S.B. 1391 codified Penal Code §1054.9 "in the wake of the Rampart cases in which numerous felons were released from prison because their conviction depended heavily on testimony from law enforcement that subsequently turned out to be false." Governor Gray Davis' Signing Message regarding Stats. 2002, Ch. 1105 (S.B. 1391), ¶4. Governor Gray Davis in signing the legislation specifically held, "[N]obody is above the law and in the rare cases where governmental officials deceive the Courts, there must be appropriate remedies." Id., ¶3.

18. On July 4, 2007, Plaintiff placed "Defendant Andres Santana's Informal Discovery Request; Declaration of Andres Santana" (june 30, 2007) [hereinafter "Inf. Disc. Req. 6-30-07"] in the control and possession of Kern Valley State Prison's ("KVSP") prison officials' LEGAL MAIL procedures to be placed in the U.S. Mail in a postage fully prepaid envelope, addressed to STEVE COOLEY, Los Angeles County District Attorney, 111 N. Hill Street, Los Angeles, Ca. 90012.

19. Inf. Disc. Req. 6-30-07 contained twenty-one (21) requests for postconviction discovery materials.

20. A. Request No. Three (3) of the Inf. Disc. Req. 6-30-07 requested, "All documents the Los Angeles County Sheriff's Department ('LASO') Northern Region Surveillance Apprehension Team ('NORSAT'), Cardinal Team, composed, prepared, gathered, collected, recorded, documented and/or put together, as part of the surveillance they conducted of Defendant."

    B. Request No. Nineteen (19) of the Inf. Disc. Req. 6-30-07 requested, "Prosecution witness Raul Mata's, criminal history and all of his background history, including psychological and mental health history."

21. Steve Cooley never responded to Inf. Disc. Req. 6-30-07.

22. On August 2, 2007, Plaintiff placed "Defendant Andres Santana's Revised Informal Discovery request; Declaration of Andres Santana; Verification" (Aug. 2, 2007) [hereinafter "Rev. Inf. Disc. Req. 8-2-07"] in the control and possession of KVSP's prison officials' LEGAL MAIL procedures to be placed in the U.S. Mail in a postage fully prepaid envelope, addressed to District Attorney, County of Los Angeles, 210 W. Temple Street, Los Angeles, Ca. 90012.

23. Rev. Inf. Disc. Req. 8-2-07 contained twenty-three (23) requests for postconviction discovery materials.

///
///
///

ANDRES SANTANA
PAGE 5E
42 U.S.C. §1983

24. A. Request No. Three (3) of the Rev. Inf. Disc. Req. 8-2-07 requested, "All writings [FN. 1. Defendant defines 'writings' as Evidence Code §250 defines it.] the Los Angeles County Sheriff's Department ('LASO') Northern Region Surveillance Apprehension Team ('NORSAT'), Cardinal Team, composed, prepared, gathered, collected, recorded, documented and/or put together, as part of/or in connection with the surveillance conducted of Defendant in this case."

   B. Request No. Twenty-One (21) of the Rev. Inf. Disc. Req. 8-2-07 requested, "The prosecution's trial witness, Raul Mata's, criminal history and all of his background history including psychological and mental health history."

25. The District Attorney for the County of Los Angeles, <u>STEVE COOLEY</u>, never responded to Rev. Inf. Disc. Req. 8-2-07.

26. On or about, June 26, 2008, Plaintiff placed "Informal Request for Discovery <u>People v. Santana</u> Case No. TA063973" (June 26, 2008) [hereinafter "Inf. Req. for Disc. 6-26-08"] in the control and possession of KVSP's prison officials' LEGAL MAIL procedures to be placed in the U.S. Mail in a postage fully prepaid envelope, addressed to Hardcore Unit, District Attorney's Office, Compton Branch Office, 200 W. Compton Blvd., Seventh Floor, Compton, Ca. 90220.

27. Inf. req. for Disc. 6-26-08 contained twenty-two (22) requests for postconviction discovery materials. Some of the twenty-two (22) requests contained subparts.

28. A. Request No. Two (2) of the Inf. Req. for Disc. 6-26-08 requested, "The polaroid picture LASO officers took of Defendant, on February 20, 2001, when they stopped him at the North 405 Freeway's on-ramp located on Redondo Beach Boulevard."

   B. Request No. Three (3) of the Inf. Req. for Disc. 6-26-08 requested, "Any and all writings (see Evid. Code §250), documentary and similar evidence regarding the prosecution's inquiry/investigation into the polaroid picture mentioned in request no. 2, above, to and including the prosecution's raw notes and oral statements received by the prosecutor and/or his agents during the course of the inquiry/investigation."

   C. Request No. Four (4) of the Inf. Req. for Disc. 6-26-08 requested, "The names of the LASO officers that took Richard Morales's picture, on February 20, 2001, during the traffic stop mentioned in request no. 2, above."

   D. Request No. Five (5) of the Inf. req. for Disc. 6-26-08 requested, "All writings (see Evid. Code §250), documentary and similar evidence, e.g., field identification cards (f.i. cards), including raw notes and oral statements received, that the LASO officers who stopped Defendant, during the traffic stop mentioned in request no. 2, above, made."

   E. Request No. Six (6) of the Inf. Req. for Disc. 6-26-08 requested, "All writings (see Evid. Code §250), documentary and similar evidence, including raw notes and oral statements received, of the observations and/or identifications made of Defendant by LASO's NORSAT Cardinal team:

///
///

ANDRES SANTANA
PAGE 5F
42 U.S.C. §1983

    **a.** Det. McKague, and/or any other LASO NORSAT member,

       **(i)** on 2-20-01,

           · at the Inglewood Parole Office,
           · at the traffic stop made by LASO LOMITA UNIT 35 T-1, and
           · at any place; and

      **(ii)** on 2-21-01,

           · at Defendant's home/residence, and
           · at any place; and

     **(iii)** on 3-7-01,

           · at Defendant's home/residence, and
           · at any place; and

      **(iv)** on any date between 2-18-01 and 3-7-01.

    **b.** Det. Gonzalez, and/or any other LASO NORSAT member,

       **(i)** on 2-20-01,

           · at 3717 W. 106th Street, Inglewood California, and
           · at any place; and

      **(ii)** on 2-21-01,

           · at 3717 W. 106th Street, Inglewood California, and
           · at any place; and

     **(iii)** on 3-7-01,

           · at curb on 68th Street/Orcutt Avenue, Long Beach California,
           · when last seen north bound on Long Beach Boulevard, at Rosecrans Boulevard,
           · at the Inglewood Parole Office, and
           · at any place; and

      **(iv)** on any date between 2-18-01 and 3-7-01.

    **c.** Det. Cotto, and/or any other LASO NORSAT member,

       **(i)** on 2-20-01,

           · at the Welfare Office located at 1200 Imperial Blvd., Inglewood California, and
           · at any place; and

      **(ii)** on 2-21-01; and

     **(iii)** on 3-7-01; and

      **(iv)** on any date between 2-18-01 and 3-7-01.

///
///
///
///

ANDRES SANTANA
PAGE 5G
42 U.S.C. §1983

    d. Det. Herron, and/or any other LASO NORSAT member,

      (i) on 2-20-01,

        · at 3717 W. 106th Street, Inglewood California, and
        · at any place; and

      (ii) on 2-21-01; and

      (iii) on 3-7-01; and

      (iv) on any date between 2-18-01 and 3-7-01.

    e. Det. Hickey, and/or any other LASO NORSAT member,

      (i) on 2-20-01; and

      (ii) on 2-21-01; and

      (iii) on 3-7-01; and

      (iv) on any date between 2-18-01 and 3-7-01.

    f. Det. Arellano, and/or any other LASO NORSAT member,

      (i) on 2-20-01; and

      (ii) on 2-21-01; and

      (iii) 3-7-01; and

      (iv) on any date between 2-18-01 and 3-7-01.

    g. Sergeant Shupe, and/or any other LASO NORSAT member,

      (i) on 2-20-01; and

      (ii) on 2-21-01; and

      (iii) on 3-7-01; and

      (iv) on any date between 2-18-01 and 3-7-01.

F. Request No. Seven (7) of the Inf. Req. for Disc. 6-26-08 requested, "All writings (see Evid. Code §250), documentary and similar evidence, including raw notes and oral statements received, of the observations and/or identifications made of Defendant by LASO's Internal Criminal Investigation Bureau Surveillance Team.

    a. on 2-22-01; and

    b. on any date between 2-18-01 and 3-7-01.

G. Request No. Twenty-One (21) of the Inf. Req. for Disc. 6-26-08 requested, "The prosecution's trial witness Raul Mata's criminal history, background history, psychological history, mental health and medical history, to and including any and all medical attention, tests and their results, given and/or that he was submitted to, on 2-18-01, at the place of the incident in question or any other place.

///

ANDRES SANTANA
PAGE 5H
42 U.S.C. §1983

29. The Hardcore Unit, District Attorney's Office, Compton Branch Office, Los
Angeles County District Attorney Steve Cooley, never responded to Inf. Req.
for Disc. 6-26-08.

30. Given that there was no response to the postconviction discovery requests
mentioned in ¶¶18, 22, and 26, above, on December 22, 2008, Plaintiff placed
"Defendant Andres Santana's Notice of Motion and Motion for Post Conviction
Discovery; Declaration of Andres Santana; Verification" (Dec. 17, 2008)
[hereinafter "Cal. Supreme Crt. PCD Motion"] in the control and possession
of KVSP's prison officials' LEGAL MAIL procedures to be placed in the U.S.
Mail in a postage fully prepaid envelope, addressed to the California Supreme
Court, to compel the production of the discovery materials requested in the
discovery requests mentioned in ¶¶18, 22, and 26, above.

31. On January 5, 2009, Plaintiff received a communication, dated December 29,
2008, from the California Supreme Court's Deputy Clark H. Wong ("Wong"),
informing Plaintiff that Wong was refusing to file Plaintiff's Cal. Supreme
Crt. PCD Motion, unless Plaintiff filed it with a writ of habeas corpus.

32. From December 22, 2008, to January 30, 2009, Plaintiff and Wong exchanged
various communications wherein Plaintiff, to no avail, sought the filing,
by Wong, of his Cal. Supreme Crt. PCD Motion.

33. Subsequently, Plaintiff filed a "Petition for Writ of Mandate and Declaratory
Relief" (Mar. 1, 2009) -- see <u>Andres Santana v. Hoover Wong, as Deputy Clerk,
etc.</u>, No. S171358, California Supreme Court -- for an order, amongst other
things, commanding Wong to file the Cal. Supreme Crt. PCD Motion.

34. Subsequently, Plaintiff received a communication, dated March 24, 2009, from
the California Supreme Court's Supervising Deputy Clerk, Jorge E. Navarette,
informing Plaintiff that in order to consider his petition, the court requested
that he submit a copy of his Penal Code §1054.9 motion.

35. Plaintiff complied with the California Supreme Court's request and it proceeded
to accept, file, and deny without prejudice Plaintiff's Cal. Supreme Crt. PCD
Motion to filing it in the trial court. See <u>People v. Santana</u>, No. S171762
(Apr. 22, 2009), California Supreme Court.

36. Following the California Supreme Court's denial without prejudice, mentioned
in ¶35, above, Plaintiff filed "Defendant Andres Santana's Notice of Motion
and Motion for Post Conviction Discovery; Declaration of Andres Santana;
Verification" (May 5, 2009) in the trial court: <u>People v. Santana</u>, No. TA063973.
On June 25, 2009, the trial court denied the motion without prejudice because
it wanted Plaintiff to expand on his good faith efforts to obtain the requested
postconviction discovery materials from his trial counsel.

37. On August 3, 2009, Plaintiff placed "Defendant Andres Santana's Notice of
Motion and Motion for Post Conviction Discovery; Declaration of Andres
Santana; Verification" (July 17, 2009) [hereinafter "PCD Motion"] in the
control and possession of KVSP's prison officials' LEGAL MAIL procedures to
be placed in the U.S. Mail in a postage fully prepaid envelope, addressed
to the trial court and Steve Cooley, District Attorney of Los Angeles County,

ANDRES SANTANA
PAGE 5I
42 U.S.C. §1983

Compton Branch Office, 200 Compton Blvd., Seventh Floor, Compton, Ca. 90220.
PCD Motion was filed in the trial court, on August 12, 2009, in People v.
Santana, No. TA063973. PCD Motion sought an Order from the trial court to
compel the Los Angeles County District Attorney provide/disclose, to Plaintiff,
the postconviction discovery materials requested in the postconviction
discovery requests mentioned in ¶¶18, 22, and 26, above.

38. PCD Motion contained twenty-two (22) requests for postconviction discovery
materials. Some of the twenty-two (22) requests contained subparts.

39. Requests No's. Two (2) through Seven (7) of the PCD Motion were the same
Requests No's. Two (2) through Seven (7) of the Inf. Req. for Disc. 6-26-08,
set forth in ¶28, A-F, above. Request No. Twenty-One (21) of the PCD Motion
was the same Request No. Twenty-One (21) of the Inf. Req. for Disc. 6-26-08,
set forth in ¶28, G, above.

40. Each of the PCD Motion's twenty-two (22) postconviction discovery requests
was accompanied by its very own distinct statutory and constitutional categories
that made them discoverable/produceable, pursuant to Penal Code §1054.9.

41. Subsequently, the trial court called attorney Robin J. Yanes ("Yanes") into
its chambers. The trial court and Yanes were talking about something else
when Plaintiff's matter came up. The trial court said to Yanes that it wished
it could get some one to help Plaintiff get whatever he was looking for in
terms of discovery from the district attorney's office. Yanes said he would
do it; he would contact the district attorney's office. The trial court
specifically instructed Yanes **NOT TO TAKE OVER ANYTHING; PLAINTIFF WAS IN
PRO PER**. Yanes was just given standing to contact the district attorney's
office to try to help Plaintiff get whatever it was he was trying to get
from the district attorney's office. The trial court had Yanes fill out
"Appointment Order Professional Appointee Court Expense" (Aug. 20, 2009).

42. From 2009 to 2015, Plaintiff and Yanes kept in constant communication and
conferred relative to the production, from the district attorney, of the
postconviction discovery materials requested in the PCD Motion.

43. On August 28, 2012, Yanes' office informed Plaintiff it had received a "CD"
from Deputy District Attorney **TERESA MAGNO** ("DDA Magno"). The documents on
the CD were mailed to Plaintiff in paper format. They consisted of approximately
700 pages. Plaintiff's "murder book" Volumes I and II, County of Los Angeles
-- Sheriff's Department, Detective Division -- Homicide Bureau," File No. 001-
03149-2112-011, and various other documents, were a part of the 700 pages.
Plaintiff's murder book's page numbers were made and circled with black marker.
The various other documents were not so paginated. The unpaginated documents
were not a part of the murder book and alot were duplicates, containing
information that was foreign to Plaintiff, including information of Edward
Nevarez. None of the 700 pages were labeled or identified as being responsive
to the PCD Motion's requests, and none were. There was also no responsive
pleading/document attached to the 700 pages denoting their relation to the
requests in the PCD Motion.

///

ANDRES SANTANA
PAGE 5J
42 U.S.C. §1983

44. Plaintiff informed Yanes that the documents mailed to him were not the materials
requested in the PCD Motion, Plaintiff still needed said materials, and to
please inform DDA Magno of the such.

45. Yanes then proceeded to inform Plaintiff that DDA Magno had prosecuted and
conducted a second trial of the February 18, 2001 incident, and convicted
Edward Nevarez for it.

46. In August or September of 2011, Plaintiff was transferred from KVSP to Centinela
State Prison ("CEN"). In September of 2013, Plaintiff was transferred from
CEN to Calipatria State Prison ("CAL"). In October of 2014, Plaintiff was
transferred from CAL to Pleasant Valley State Prison ("PVSP"). In July of
2015, Plaintiff was transferred from PVSP back to CAL.

47. Plaintiff filed Notices of Change of Address, with the trial court, every
time he was transferred between prisons. He also SERVED copies of the Notices
on the Los Angeles County District Attorney, and/or his designee, and Yanes.

48. Petitioner kept asking Yanes if the distrcit attorney had said anything
concerning the PCD Motion's requested discovery materials. Yanes always said,
"No."

49. On August 6, 2015, in response to Plaintiff's change of addresses, the trial
court generated an "Order Re: Notice of Change of Address//Motion Pursuant
to Penal Code Section 1054.9" (Aug. 6, 2015), in which it referenced the
trial court's June 25, 2009, denial without prejudice of Plaintiff's motion
for postconviction discovery, to find that there were no postconviction
discovery proceedings pending in the trial court. See, ¶36, above (denoting,
on June 25, 2009, trial court denied postconviction discovery motion because
it wanted Plaintiff to expand on his good faith efforts to obtain the requested
postconviction discovery materials from his trial counsel).

50. On August 14, 2015, Plaintiff placed "Defendant Andres Santana's Notice of
Motion and Motion for Reconsideration, or, Alternatively, Ex Parte Application
for Non-Dispositive Relief In This Action; Memorandum of Points and Authorities;
Verification" (Aug. 14, 2015) in the control and possession of CAL's prison
officials' LEGAL MAIL procedures to be placed in the U.S. Mail in a postage
fully prepaid envelope, addressed to the trial court, Bretford J. Ferreira,
Deputy In Charge, Los Angeles County District Attorney's Office Habeas Corpus
Litigation Team, Hall of Records, 320 West Temple Street, Suite 540, Los
Angeles, Ca. 90012, and Yanes. Said motion was filed in the trial court,
on August 24, 2015, in People v. Santana, No. TA063973, and, at 5:20-6:8,
16-26; and 9:17-23, the motion informed the trial court that it had confused
Penal Code §1054.9 motions and that his PCD Motion was indeed still pending
in the trial court. Plaintiff noticed the motion for a hearing, on September 4,
2015, at 8:30 a.m., in the trial court's Department South Central "L."

51. Plaintiff received no response to the motion mentioned in ¶50, above.

///
///
///

ANDRES SANTANA
PAGE 5K
42 U.S.C. §1983

52. Given that Plaintiff received no response from the trial court, on September 23, 2015, Plaintiff placed "Defendant Andres Santana's Ex Parte Application for an Order to Continue and/or Reconsider the Sept. 4, 2015 Hearing/Order to/on Oct. 16, 2015, Order Defendant Appear Telephonically and Waive the Fees for the Telephonic Appearance; Memorandum of Points and Authorities; Verification" (Sept. 16, 2015) in the control and possession of CAL's prison officials' LEGAL MAIL procedures to be placed in the U.S. Mail in a postage fully prepaid envelope, addressed to the trial court, Bretford J. Ferreira, Deputy In Charge, Los Angeles County District Attorney's Office Habeas Corpus Litigation Team, Hall of Records, 320 West Temple Street, Suite 540, Los Angeles, Ca. 90012, and Yanes. Said application was filed in the trial court in People v. Santana, No. TA063973. Plaintiff noticed the application for a hearing on October 16, 2015, at 8:30 a.m., in the trial court's Department South Central "L."

53. Plaintiff received no response to the application meantioned in ¶52, above.

54. On December 8, 2015, the trial court held an in chambers audience with Yanes and deputy district attorney Dennis Fuhrman. Yanes communicated to the trial court what is mentioned in ¶41, above. Plaintiff was not notified of the December 8, 2015 audience, nor was he present for it. After hearing what is mentioned in ¶41, above, the trial court held that it would be best to describe Yanes' appointment as a limited appointment to just informally assist Petitioner and informally contact the district attorney's office just to see if Yanes could obtain, on Plaintiff's behalf, the items that Plaintiff had requested. With that said, the trial court formally denied Plaintiff's request for post-conviction discovery pursuant to Penal Code §1054.9, holding the request was made August 12, 2009, initially.

55. On December 8, 2015, the trial court generated "Order Re: Notice of Change of Address//Motion Pursuant to Penal Code Section 1054.9" (Dec. 8, 2015) which did not entertain, address, include findings of fact, or mention in any way, shape, or form, any of Plaintiff's twenty-two (22) PCD Motion's requests for postconviction discovery, much less rule on their merits.

56. Given that the trial court refused to perform its ministerial duty to hear Plaintiff's PCD Motion, and decide the merits of it, and being that Plaintiff was without further remedy to have the trial court correct its error and give Plaintiff a decision on the merits of his PCD Motion, Plaintiff subsequently filed writs of mandate in the reviewing courts of California, which were DENIED with no hearing or briefing. See, Andres Santana v. The Superior Court of Los Angeles County (People), No. B294382 (Feb. 20, 2019), California Court of Appeals, Second Appellate District, Division Six; Andres Santana v. Superior Court of Los Angeles County (People), No. S256089 (July 10, 2019), California Supreme Court.

57. Plaintiff then sought review of the final judgment of the California Supreme Court, mentioned in ¶56, above, by writ of certiorari to the United States Supreme Court, which was DENIED. See Andres Santana v. Superior Court of California, Los Angeles County, et al., No. 19-6425 (Jan 13, 2020), United States Supreme Court.

///

ANDRES SANTANA
PAGE 5L
42 U.S.C. §1983

58. In February of 2020, Plaintiff was transferred to Pelican Bay State Prison ("PBSP") from CAL. During this same time PBSP began a MODIFIED PROGRAM (see 15 CCR §3000 for definition of "Modified Program") in response to the world wide COVID-19 pandemic, which, amongst other things, restricted Plaintiff's interaction with other inmates by restricting outdoor physical exercise and confining him to his quarters, and disallowing him physical law library access.

59. In September/October 2020, PBSP allowed Plaintiff outdoor physical exercise in the big grass yard of the facility with inmates outside his housing unit's section. Plaintiff saw Albert Villa, an old acquaintance that grew up with Plaintiff in Lynwood California. Plaintiff and Albert Villa began talking and old acquaintances came up, amongst them was Edward Nevarez. Plaintiff told Albert Villa what Yanes had told him concerning Edward Nevarez. Plaintiff told Albert Villa was convicted of the February 18, 2001, incident and Plaintiff trie to look up Edward Nevarez's appeal in the prison's law libraries, but the law libraries' computers only carried published cases through their WEST LAW database. Albert Villa then told Plaintiff that he would ask his sister if she could look up Edward Nevarez's appeal on the internet. Plaintiff had no such resources.

60. In December of 2020, Albert Villa told Plaintiff his sister had found a case for Edward Nevarez. He gave the following case to Plaintiff: People v. Edward G. Nevarez, No. B234857 (Mar. 18, 2013) [unpub. opn.], California Court of Appeals, Second Appellate District, Division Six [hereinafter "Nevarez Unpublished Opinion"].

61. The first sentence of the "Factual and Procedural Summary" of the Nevarez Unpublished Opinion reads as follows, "Late at night on February 17, 2001, Enrique Hernandez and victims Anthony (Tony) Esquer and Reynaldo Aguilar were drinking beer in Aguilar's parked SUV when appellant walked by with Andres Santana."

62. On the other hand, the first and second sentences of the "Facts and Procedural History" of Plaintiff's 2005 Court of Appeals Opinion, in People v. Andres Santana, No B167415 (Apr. 11, 2005) [unpub. opn.], California Court of Appeals, Second Appellate District, Division Six, reads as follows, "In the late evening, vistims Reynaldo Aguilar and Tony Esquer were sitting in a parked SUV with Raul Mata. The three men had smoked crack cocaine earlier that day and were drinking beer in the SUV."

63. Nowhere in the Nevarez Unpublished Opinion is the name Raul Mata found. Plaintiff sincerely believed Raul Mata was replaced with Enrique Hernandez at the second trial of the February 18, 2001 incident, which DDA TERESA MAGNO prosecuted against Edward Nevarez. Plaintiff also noticed the fact the three (3) men were smoking crack cocaine was not presented at the second trial, according to the Nevarez Unpublished Opinion.

///
///
///
///

ANDRES SANTANA
PAGE 5M
42 U.S.C. §1983

64. Following Plaintiff discovering that Raul Mata was replaced with Enrique Hernandez, at the second trial of the February 18, 2001 incident, he proceeded to retrieve from the over two £2· decade old mountain of litigation documents he has in his cell -- the accumulation of his continued attempts to prove his mistaken identity defense/not being present at the incident in question/ innocence -- the 700 pages of documents Yanes mailed to him. Upon doing so, he discovered five (5) documents with the name Enrique Hernandez on them. The documents contained information of a massive criminal history for Enrique Hernandez, going back to 1987 [hereinafter, conjunctively, "Info. For Enrique Hernandez"].

65. The Info. For Enrique Hernandez contains a criminal history going back to 1987. It includes felonies (arrests and convictions), misdemeanors (arrests and convictions), jail and prison terms, probation and parole supervision (denoting Enrique Hernandez being within the statutory parole period, on February 18, 2001 [the date of the incident in question], and December of 2002 [when he testified at Plaintiff's 2002 trial]), bail/bond being forfeited, warrants, deportations, and having between eighteen (18) to twenty-four (24) aliases.

66. Plaintiff then proceeded to request from Yanes **ALL PROPERTY** he had concerning Plaintiff's case in People v. Santana, No. TA063973, Los Angeles County Superior Court.

67. On or about, March 1, 2021, Yanes mailed a box to Plaintiff containing the property mentioned in ¶66, above. The first document Plaintiff retrived from the box was a County of Los Angeles -- Supplementary Report File No. 001-03149-2112-011, (July 12, 2010), by: Karen Shonka and Wayne Holston, consisting of four (4) pages [hereinafter "Shonka Supp. Rprt."].

68. Page 3, ¶¶3 and 4, 4th sentence, of the Shonka Supp. Rprt., sets forth that on July 6, 2010, Detectives Shonka and Holston conducted an interview of a man in Puerto Vallarta Mexico at the Sheraton Bouganvilla Hotel Lobby. The man stated he had numerous aliases, including Raul Mata, but his true name is Enrique Hernandez.

69. DDA TERESA MAGNO, STEVE COOLEY, DDA'S JOHN/JANE DOES, and Los Angeles County District Attorney GEORGE GASCON, use(d) Penal Code §1054.9's absence of any procedures for the production of postconviction discovery materials to:

  A. Not respond to Plaintiff's postconviction discovery requests mentioned in ¶¶18, 22, and 26, above.

  B. Not produce the postconviction discovery materials Plaintiff requested in the postconviction discovery requests mentioned in ¶¶18, 22, and 26, above.

  C. Not litigate the PCD Motion Plaintiff filed in the trial court mentioned in ¶37, above.

  D. Not produce the postconviction discovery materials requested in the PCD Motion Plaintiff filed in the trial court mentioned in ¶37, above.

///

ANDRES SANTANA
PAGE 5N
42 U.S.C. §1983

    E.  Ultimately, produce over 700 pages of documents in a prosecutor may hide, defendant must seek fashion, causing Plaintiff to not have knowledge of discovery materials in the possession of the prosecution and law enforcement authorities to which he would have been entitled at time of trial, for almost two (2) decades, after initially requesting them via the Inf. Disc. Req. 6-30-07 mentioned in ¶18, above.

    F.  Treat Plaintiff differently from other persons who are convicted of a felony and are currently serving a term of imprisonment, and who make a written motion for performance of DNA testing, stating that they are not the perpetrators of the crime, asserting their innocence, pursuant to Penal Code §1405.

70. Los Angeles County District Attorney GEORGE GASCON, and his deputies, will use Penal Code §1054.9's absence of any procedures for the production of postconviction discovery materials to subject Plaintiff to what is mentioned in ¶69, A-F, above, when Plaintiff once again employs Penal Code §1054.9 to be provided reasonable access to discovery materials in the possession of the prosecution and law enforcement authorities to which he would have been entitled at time of trial, following what is mentioned in ¶¶61-68, above.

71. Penal Code §1054.9's absence of any procedures for the production of postconviction discovery materials, allowed, and is allowing, the Los Angeles County District Attorney, and its deputies, to deceive the courts, by subjecting Plaintiff to what is mentioned in ¶69, A-F, above, rendering the statute devoid of appropriate remedies, making the State's postconviction relief procedures fundamentally inadequate to vindicate the substantive rights provided.

E. REQUEST FOR RELIEF

I believe that I am entitled to the following specific relief:

1. Demand jury trial.

2. To be treated like persons who employ Penal Code §1405, to and including, but not limited to, being afforded the rights and procedures set forth in the "Supporting Facts," ¶¶11, 12, 13, 14, and 15, ante, when Plaintiff employs Penal Code §1054.9.

3. Procedures, and/or a framework, in which Penal Code §1054.9 postconviction discovery requests are responded to by the Los Angeles County District Attorney in a timely manner.

4. Procedures, and/or a framework, in which materials requested in Penal Code §1054.9 postconviction discovery requests are produced by the Los Angeles County District Attorney in a timely manner.

5. Procedures, and/or a framework, in which Penal Code §1054.9 postconviction discovery motions filed in the trial court are responded to by the Los Angeles County District Attorney in a timely manner.

6. Procedures, and/or a framework, in which Penal Code §1054.9 postconviction discovery motions filed in the trial court are entertained and heard on their merits therein.

7. Procedures, and/or a framework, in which Plaintiff is given notice of Penal Code §1054.9 hearings held in the trial court, and given an opportunity to be present, and heard, on the merits of his requests.

8. Pocedures, and/or a framework, in which Penal Code §1054.9 postconviction discovery materials produced by the Los Angeles County District Attorney are produced not in a prosecutor may hide, defendant must seek, fashion.

9. The production of the postconviction discovery materials requested in Plaintiff's PCD Motion, to and including, the materials requested set forth in ¶39 of the "Supporting Facts," ante.

10. A declaration that Penal Code §1054.9's absence of any procedures for the production of postconviction discovery materials violates Plaintiff's Procedural Due Process

CONTINUED ON PAGE 6A

| January 3, 2024 | |
|---|---|
| (Date) | (Signature of Plaintiff) |

ANDRES SANTANA
PAGE 6A
42 U.S.C. §1983

rights under the United States Constitution's Fourteenth Amendment.

11. A declaration that Penal Code §1054.9's absence of any procedures for the production of postconvictiondiscovery materials violates Plaintiff's Equal Protection rights under the United States Constitution's Fourteenth Amendment.

12. Costs of lawsuit and reasonable attorney fees.

ANDRES SANTANA K00977
CEN, C4-110
P.O. BOX 921
IMPERIAL, CA. 92251

January 3, 2024

CONFIDENTIAL LEGAL MAIL
15 CCR §3141 (c)(5)

Clerk of Court
United States District Court
Central District of California
255 East Temple Street, Suite TS-134
Los Angeles, Ca. 90012
ATTN: PRO SE CLERK

      Re: Andres Santana v. George Gascon, et al.,
          Case No.: [new action], U.S. Dist. Crt.,
          Central Dist. of California

Dear Clerk,

    I am a state prisoner at Centinela State Prison ("CEN") under judgment of two (2) life sentences without the possibility of parole.

    Enclosed please find a 42 U.S.C. §1983 Civil Rights Complaint I would like to file in this court. However, the In Forma Pauperis' prison official's Certification section, along with a certified statement of my trust account, is being mailed to you, by prison officials, in a separate envelope.

    I requested the prison official's Certification and the certified trust account statement, on January 3, 2024. See attached true and correct copy of State of California GA-22 (Rev. 2013-10), from me to I/M Trust Account Office (Jan. 3, 2024).

    A true and correct copy of the In Forma Pauperis, with the exception of the aforementioned prison official's Certification and certified trust account statement, is attached to the 42 U.S.C. §1983. The completed In Forma Pauperis and certified trust account statement is being sent by prison officials. Please hold/LODGE my Complaint until it arrives. It should not be too long.

    Thank you very much for your attention in this matter.

                        Very truly yours,

                        Andres Santana
                        In Pro Se

as
cc: AS
Enclosures

STATE OF CALIFORNIA
GA-22 (Rev. 2013-10)

## INMATE REQUEST FOR INTERVIEW

DEPARTMENT OF CORRECTIONS & REHABILITATION

| DATE | TO | FROM (LAST NAME) | CDCR NUMBER |
|---|---|---|---|
| 1-3-24 | I/M Trust Account Office | SANTANA, A. | K00977 |

| HOUSING | BED NUMBER | WORK ASSIGNMENT | JOB NUMBER |
|---|---|---|---|
| C 4 | 110 | None | FROM — TO — |

OTHER ASSIGNMENT (SCHOOL, THERAPY, ETC.)

ASSIGNMENT HOURS
FROM — TO —

Clearly state your reason for requesting this interview.
You will be called in for interview in the near future if the matter cannot be handled by correspondence.

Please generate A certified I/M Trust Account Statement for me
& Fill out Page 3 of the enclosed In Forma Pauperis Request.
Send Certified Trust Account Statement to U.S. Dist. Crt., with Forma
Pauperis Request, in the Attached SASE, Notify me when done. THANK YOU.

Do NOT write below this line. If more space is required, write on back.

INTERVIEWED BY                                                    DATE

DISPOSITION

CC: AS (Handwritten Copy)

Andres Santana K00977
CEN, C4-110
P.O. Box 921
Imperial, CA. 92251

CONFIDENTIAL LEGAL MAIL

GENERATED FROM
CENTINELA STATE PRISION

US POSTAGE + PITNEY BOWES

ZIP 92251 $ 002.55⁰
02 4R
0000339865 JAN 10 2024

RECEIVED
CLERK U.S. DISTRICT COURT
JUN 1 2 2024

Clerk of Court
United States District Court
Central District of California
255 East Temple Street, Suite TS-134
Los Angeles, CA. 90012
ATTN: PRO SE CLERK